IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JANE DOE; JOHN and MARY DOE, Parents and Legal Guardians of the Minor Child, JUNE DOE; and JOHN and MARY DOE, Parents and Legal Guardians of the Minor Child, SALLY DOE, <br><br> Plaintiffs, <br><br> v. <br><br> RUTHERFORD COUNTY, TENNESSEE, BOARD OF EDUCATION, <br><br> Defendant. | Case No. 3:13-cv-00328 <br> Judge Trauger <br><br> JURY DEMAND |

## SECOND AMENDED COMPLAINT

Come now, Plaintiffs, JANE DOE and JOHN and MARY DOE, the parents and legal guardians of the minor children SALLY DOE and JUNE DOE, who file this Complaint against Defendant, the RUTHERFORD COUNTY, TENNESSEE, BOARD OF EDUCATION, showing this honorable Court as follows:

PARTIES, JURISDICTION, AND VENUE

1.  Plaintiffs are residents of Rutherford County, Tennessee.

2.  Defendant, Rutherford County Board of Education (the "Board"), is an entity, which operates all Rutherford County public schools.

3.  This Court has jurisdiction over Plaintiffs' federal claims pursuant to its federal question jurisdiction, 28 U.S.C. § 1331. Plaintiffs' claims arise under Title IX, 20 U.S.C. § 1682.

4.  The acts and omissions giving rise to this action occurred in Rutherford County,

Tennessee, within this judicial district. Accordingly, this Court has venue pursuant to 28 U.S.C. § 1391(b).

## FACTS

5. Plaintiffs Jane Doe, June Doe, and Sally Doe are sisters. They are also excellent basketball players. Jane Doe, date of birth: February 28, 1994, enrolled as a senior. June Doe, date of birth: May 2, 1995, enrolled as a sophomore. Sally Doe, date of birth: November 1, 1996, enrolled as a freshman.

6. The Board, during all material times, received and continued to receive Federal Financial Assistance under Title IX of the Educational Amendments of 1972, 20 U.S.C. 1681(a).

7. During the Fall of 2012, the sisters enrolled in Siegel High School, which is owned and operated by the Board.

8. The sisters also joined the girls' basketball team at the invitation and pleasure of its coach, Allen Bush ("Coach Bush").

9. When basketball conditioning and practice began at the end of October, 2012, Coach Bush's daughter, Jane Roe, also a Siegel student and member of the basketball team, decided to haze and initiate the sisters onto the basketball team.

10. Between the approximate dates of October 29 and November 2, 2012, Jane Roe engaged in what Plaintiffs later learned to be the "goosing game" or "cornholing," an activity whereby Jane Roe inserted a finger in or near the rectums of the sisters. Jane Roe did in fact penetrate the rectum of two of the sisters. Each sister was greatly shocked, horrified, and offended by the conduct.

11. Plaintiffs reported the conduct to Coach Bush on the evening of November 2,

2012.

12. Pursuant to Board policy, Coach Bush was required to report the sexual harassment/bullying to a complaint manager within 24 hours. Coach Bush failed to do so.

13. Coach Bush also failed to discipline his daughter, and Jane Roe became a starter and team captain.

14. Since Coach Bush had done nothing, Mary Doe and her sister-in-law made a complaint to Siegel's principal, Jason Bridgeman, during the week of November 19. Principal Bridgeman had not heard of Jane Roe's conduct and promised that he would personally handle it. Principal Bridgeman agreed with Mary Doe's assertion that her daughters had been sexually assaulted, which is a zero tolerance offense pursuant to Board policy.

15. Another week passed, and Plaintiffs heard nothing from the school. John Doe contacted Assistant Principal Renee Martin, who informed him that she had been conducting interviews of those involved.

16. Assistant Principal Martin did interview the three sisters and indicated that she knew that the conduct described had been a problem at Siegel for at least three years. However, Assistant Principal Martin also stressed to the sisters that she did not want to damage the name and image of the "Siegel family" and the "Siegel nation."

17. Some time after the interviews were conducted, John Doe again contacted Assistant Principal Martin to ask what would be done. Assistant Principal Martin stated that Jane Roe had taken blame for the action and would be suspended for one basketball game and would not be the captain for two games.

18. During the first part of December, Plaintiffs also made a report to Siegel's School Resource Officer, Sergeant Irvin Turner. In his report, Sergeant Turner made the observation

that Jane Roe's conduct was considered to be the "'goosing' game," a term not known to Plaintiffs prior to receiving Sergeant Turner's report. Sergeant Turner further made the observation that the goosing game is "when a member of the team sticks her finger in or near the rectum of an unsuspecting teammate."

19. Notably, the basketball team was not instructed to stop engaging in the behavior.

20. Plaintiffs were offended at the Board's failure to take their allegations seriously, the lack of repercussion for Jane Roe, and deliberate indifference.

21. On or about the week of December 18, Plaintiffs then complained to Don Odom, the Board's Director of Schools. Director Odom had not heard of the incident and assured Plaintiffs that he would look into it and take it seriously.

22. In response to the complaint to Director Odom, the Board's attorney, Angel McCloud, emailed Plaintiffs and stated that Principal Bridgeman "is planning to send a letter to parents regarding the hazing incidents. The letter will go out shortly after the holiday break." To Plaintiffs' knowledge, no letters were sent, as they certainly did not receive one.

23. Another month passed and on or about January 28, 2013, Plaintiffs met with Superintendent Odom to inform him that the letter was never sent and that the Board was not dealing with the matter seriously.

24. On February 1, 2013, the Board finally decided it would investigate.

25. On or about February 4, 2013, Ms. McCloud and Paula Barnes conducted interviews.

26. As a direct result of and retaliation for involving the Board, Coach Bush began retaliating against Plaintiffs by reducing the playing time of the two oldest sisters, who began the season as starters.

27. On or about February 11, 2013, Ms. McCloud prepared a report, indicating that Jane Roe had admitted to "poking" the sisters in the "buttocks." Ms. McCloud's report also stated that the team had acted appropriately by allowing the team captains, including Jane Roe, to discuss the "issues" "in general terms" and later in more "specific" terms. From Ms. McCloud's report, it is clear that no coach or school official addressed the team regarding the assaults and the need to eliminate such hazing and team initiating conduct.

28. Finally, in the report, Ms. McCloud stated that the Board would not place the sisters in another school, as Plaintiffs had requested.

29. After making such reports, Plaintiff June Doe has been subjected to "cutting the cheese" in the hallways of Siegel. "Cutting the cheese" is assaultive conduct whereby a student will run his/her flat hand between the legs and buttocks of an unsuspecting student from behind.

30. As another form of retaliation, on or about February 8, 2013, Coach Bush did not play Plaintiff Jane Doe in the game on "senior night." It is customary at Siegel and every other school in the country that every senior on a sports team will play on "senior night," even if only briefly. Plaintiff Jane Doe was the only senior on the team and had started during times in the season.

31. As a result of the assault, the Board's inaction, and retaliation, Plaintiffs Jane Doe and June Doe withdrew from Siegel, completing their high school studies through home school. Plaintiff Sally Doe transferred to a different high school to get away from the retaliation and hostility.

32. As another form of retaliation, Coach Bush kicked Plaintiffs Jane and June Doe off of the basketball team. Plaintiffs learned of this retaliation by email from Principal Bridgeman to John Doe on February 11, 2013, the date of Ms. McCloud's letter detailing her

"investigation." John Doe asked for an explanation but was never given one.

33. Plaintiffs learned from a detective with the Rutherford County Sheriff's Department that the "goosing" game is and has been a problem at Rutherford County high schools. Plaintiffs learned from the detective that the activity is also known as "cornholing" or "cornhogging."

## COUNT I
## TITLE IX, 20 U.S.C. § 1681

34. Plaintiffs incorporate the allegations of this Complaint as if fully realleged herein.

35. The Board receives federal funding under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

36. Section 901(a) of Title IX provides:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

37. Plaintiffs Jane Doe, June Doe, and Sally Doe were victims of student-on-student sexual assault and harassment, harassment prohibited by Title IX.

38. The sexual harassment suffered by Plaintiffs was severe, pervasive, and objectively offensive.

39. The sexual harassment created a hostile environment at Siegel.

40. The sexual harassment constituted discrimination based on sex.

41. The Board, by and through its agents, had actual and constructive knowledge of the ongoing sexual harassment.

42. The Board had the authority and capacity to investigate and discipline students committing the harassing and assaultive behavior. The Board failed to act and react timely,

6

appropriately, and reasonably, thus permitting and endorsing the behavior.

43. The Board's response to Jane Roe's behavior constitutes deliberate indifference.

44. By reporting the sexual harassment, Plaintiffs engaged in protected activity.

45. After making the report of sexual harassment, Plaintiffs suffered materially adverse action, such as reduced playing time; for Plaintiff Jane Doe, not being played on senior night and forced to withdraw from school; for Plaintiffs June and Sally Doe, being kicked off of the basketball team; for Plaintiff Doe, being forced to withdraw from school; and for Plaintiff, being forced to transfer schools.

46. Such materially adverse action would have dissuaded reasonable persons in the place of Plaintiffs from making or supporting claims of sexual harassment.

47. There is a causal connection between Plaintiffs' protected activity and the adverse action suffered by Plaintiffs. Significantly, all of the actions occurred within days of Plaintiff reporting the sexual harassment to the Board.

48. The Board, by and through its agents, retaliated against Plaintiffs for making a report of sexual harassment.

49. The actions of Defendant were in reckless indifference to Plaintiffs' rights.

50. As a result of the harassment, Plaintiffs have suffered mental anguish, emotional distress, and embarrassment.

51. As a result of the harassment and retaliation, Plaintiffs have been denied education and educational opportunities and have been excluded from programs and activities.

WHEREFORE, Plaintiffs pray from the following relief:

a. That a summons be issued and Defendant required to answer;

b. That Defendant be found liable for unlawful, discriminatory, and retaliatory

conduct on the basis of sex;

c. That Plaintiffs be awarded damages for emotional distress, mental anguish and embarrassment caused by Defendants;

d. That Plaintiffs be awarded compensatory damages;

e. That Plaintiff be awarded any other damages to which they are entitled by law;

f. That Plaintiff be award their costs and reasonable attorneys fees associated with bringing this Complaint; and

g. Such further relief as the Court deems just and proper.

PLAINTIFFS DEMAND A JURY TO TRY THIS CAUSE OF ACTION.

Respectfully submitted,

/s/ Kerry Knox
KERRY KNOX, BPR #23302
117 S. Academy Street
Murfreesboro, TN 37130
(615) 896-1000
(615) 896-1027 (facsimile)
kek@castelliknox.com

/s/Amy J. Farrar
Amy J. Farrar, BPR #24420
HAGAN & FARRAR, PLLC
106 North Church Street
Murfreesboro, TN 37130
(615) 800-4747
(615) 900-3473 (facsimile)
amy@haganfarrar.com

8