JANE DOE, JOHN and MARY DOE, Parents )
and Legal Guardians of the Minor Child, JUNE )
DOE; JOHN and MARY DOE, Parents and )
Legal Guardians of the Minor Child, SALLY )
DOE, )
                 )
        **Plaintiffs,** )     **Case No. 3:13-cv-00328**
                 )     **Judge Aleta A. Trauger**
**v.** )
                 )
**RUTHERFORD COUNTY, TENNESSEE,** )
**BOARD OF EDUCATION,** )
                 )
        **Defendant.** )

## MEMORANDUM

Following a jury trial, the jury entered a verdict in favor of the defendant on all counts

other than plaintiff Jane Doe's Title IX retaliation claim. Pending before the court are several

post-trial motions and related requests for costs, including the plaintiffs' Motion for New Trial

(Docket No. 202), the defendant's Post-Trial Motion for Costs (Docket No. 184), plaintiff Jane

Doe's Motion for Attorney's Fees (Docket No. 197), Jane Doe's Bill of Costs (Docket No. 199),

and the defendant's Bill of Costs (Docket No. 201). For the reasons stated herein, the various

requests for fees and costs will be granted in part and denied in part, the court will award Jane

Doe $3,105.53 in pre-offer of judgment fees and expenses and nominal damages, the court will

award the defendant $12,289.65 in post-offer of judgment expenses against Jane Doe only, and

the court will deny an award of costs to the defendant relative to June and Sally Doe.

## BACKGROUND

### I. The Parties, the Claims, and the Trial Verdict

This case involved claims by Jane Doe, June Doe, and Sally Doe (the "Doe Sisters"). During the relevant time frame, the Doe Sisters were enrolled in, and played basketball for, Siegel High School ("SHS"), a school overseen by the defendant, the Rutherford County Board of Education (the "RCBE").[1]  The basic facts of this case are set forth in the court's August 18, 2014 Memorandum, familiarity with which is assumed.  (Docket No. 117.)

Briefly, in their Second Amended Complaint (Docket No. 30), the Doe Sisters alleged that Allison Bush, whose father coaches SHS's basketball team, "goosed" them during practice,[2] that the school did not adequately respond when the Doe Sisters (via their parents) reported this activity to SHS and RCBE officials, and that the coach retaliated against the Doe Sisters for reporting the alleged sexual assaults.  Each sister asserted a claim for discrimination and a claim for retaliation under Title IX, 20 U.S.C. § 1682.

On August 18, 2014, the court denied the defendant's Motion for Summary Judgment. (Docket No. 118.)  On September 30, 2014, a jury trial began on all six claims (i.e., two per plaintiff).  The jury began its deliberations on October 6, 2014.  On October 7, 2014, the jury rendered a verdict, finding in favor of the defendant on all claims other than Jane Doe's Title IX retaliation claim.  With respect to Jane Doe's retaliation claim, although the jury found the

[1] Two of the Doe Sisters, June Doe and Sally Doe, were minors as of the date they filed the initial Complaint.  Their parents appeared in this case as their legal guardians.  Although not addressed by the parties, June Doe may have reached the age of majority as of the date of this opinion.  In this Memorandum, the court will generally refer to the Doe Sisters as the "plaintiffs" for the sake of simplicity.  Also, to protect their identities, the court will refer to each of the Doe Sisters using pseudonyms: "Jane Doe" is the oldest sister, "June Doe" is the middle sister, and "Sally Doe" is the youngest sister.  For the same reason, many of the docket entries in this litigation are under seal.

[2] As set forth in testimony at trial, the conduct involved attempts by Allison Bush to swipe or poke her hand along or near the buttocks of each Doe Sister, perhaps in an effort to press one or more fingers into the anus or rectum.  Among other terms, the parties have referred to this conduct as "goosing" or "corn-holing."

RCBE liable for retaliation, the jury awarded her only nominal damages of $1.00. The verdict

form was docketed on October 8, 2014 (Docket No. 178), and the court entered the judgment on

October 9, 2010. (Docket No. 180).[3]

## II. Post-Trial Motions and Bills of Costs

### A. Motion for New Trial

On November 5, 2014, the plaintiffs filed the instant Motion for New Trial under Rule 59

(Docket No. 202), in support of which they have filed a Memorandum of Law (Docket No. 203).

The plaintiffs essentially assert three arguments: (1) the verdicts against Jane Doe (on her sexual

harassment claim) and against Jane Doe and Sally Doe (on their sexual harassment and

retaliation claims) were against the weight of the evidence; (2) it is "reasonably probable" that

defense counsel's reference to evidence excluded by the court in his closing argument influenced

the jury's verdict, and (3) the jury's award of nominal damages on Jane Doe's retaliation claim

bears no relationship to the evidence.[4]

The defendant has filed a Response in opposition. (Docket No. 217.)

### B. RCBE's Motion for Costs

On October 20, 2014, the RCBE filed a Motion for Costs (Docket No. 184), in support of

which it has filed a Memorandum of Law (Docket No. 185), the Affidavit of D. Randall

Mantooth (Docket No. 186) (attaching a 4/25/13 Rule 68 Offer of Judgment (Ex. 1) and a

---

[3] The judgment was entered on the docket on October 9, 2014, although the document itself is
dated October 10, 2014.

[4] Although it is not clear in the Motion for New Trial itself, the Memorandum in support of the
Motion for New Trial demands that Jane Doe be afforded a "new trial." Given that the jury
found for Jane Doe on the issue of liability, it is not clear whether the court could order a new
trial on a verdict in *favor* of the moving party as to liability. At any rate, as explained herein, no
new trial is warranted as to Jane Doe's retaliation claim.

5/13/13 Rule 68 Offer of Judgment (Ex. 2)), and an associated proposed Bill of Costs (Docket No. 189, Attach. No. 1).[5]  In the motion, the RCBE demands an award of all compensable litigation costs under 28 U.S.C. § 1920 (which do not include attorney's fees) that it incurred after May 13, 2013, the date on which it served its second Rule 68 Offer of Judgment (the "Offer of Judgment") on the plaintiffs.[6]  To keep the record clear, the court will generally refer to the RCBE's request for costs under § 1920 as its request for "post-offer expenses."  In the motion, the RCBE also argues that, even though she is a "prevailing party" under 42 U.S.C. § 1988 (the applicable fee-shifting statute), Jane Doe is not entitled to any attorney's fees or litigation costs (as defined under § 1920) incurred after May 13, 2013 by operation of Rule 68.  The court will refer to these types of charges as "pre-offer fees" and "pre-offer expenses."  Finally, the RCBE argues that, regardless of the court's decision concerning the Rule 68 motion, Jane Doe is not entitled to recover any litigation expenses or fees (pre- or post-offer) because the verdict was only a "technical victory."

The plaintiffs have filed a Response in opposition to the defendant's Motion for Costs (Docket No. 190), in support of which they have filed a Memorandum of Law (Docket No. 191) and declarations from the Doe Sisters and their parents (Docket Nos. 192-195) attesting to their inability to pay any monetary award against them.  Among other arguments, the plaintiffs contend that the Offer of Judgment was ambiguous and, therefore, materially defective because it consisted of a lump-sum, un-apportioned offer of $30,000.

---

[5] The defendant originally attempted to file the Bill of Costs as a separate docket entry (*see* Docket No. 187), then refiled it as an attachment to the pending Motion for Costs (Docket No. 189).

[6] The parties agree that the RCBE's earlier April 25, 2013 Offer of Judgment, which was conditional, is irrelevant to the court's analysis.  References to the "offer" or to the "Offer of Judgment" will therefore refer only to the May 13, 2013 Offer of Judgment.

The RCBE has filed a Reply (Docket No. 206), in support of which it has filed certain written or evidentiary materials (*id.*, Exs. 1-3) and the Affidavit of D. Randall Mantooth. (Docket No. 207.)

### C.  Jane Doe's Motion for Attorney's Fees

Plaintiff Jane Doe has filed a Motion for Attorney's Fees (Docket No. 197), in support of which she has filed a Memorandum of Law (Docket No. 198) with supporting declarations from her attorneys and associated legal professionals (*id.*, Attach. Nos. 1-7).  Jane Doe's counsel claims to have incurred $328,955 in attorney's fees in this case, of which her counsel seeks to recover only half – $164,477.50 – "based on the results obtained."

The RCBE has filed a Response in opposition (Docket No. 214), which incorporates its arguments concerning its separate Motion for Costs, and in support of which it has filed several trial transcript excerpts (Docket Nos. 208-213).  The RCBE argues that (1) the Offer of Judgment precludes Jane Doe from recovering attorney's fees incurred after May 13, 2013; (2) regardless of the effect of the offer of judgment, she is not entitled to recover attorney's fees because she achieved only a technical victory; and (3) even if the Offer of Judgment was not valid and the court finds that Jane Doe may recover some attorney's fees, the fee award should reflect a substantial deduction from the fees requested because (a) attorney Knox's time entries were excessive, (b) Jane Doe's attorneys duplicated efforts, (c) some of the time entries reflect work that either was not related to the litigation or that related only to claims on which the plaintiffs did not prevail, and (d) any remaining compensable fees should either be denied or, in the alternative, substantially reduced to reflect the *de minimis* "results obtained."

### D.  Competing Bills of Costs

The Doe Sisters have filed a Bill of Costs under Rule 54(d) (Docket No. 199) with supporting documentation (Docket No. 200, Attach. Nos. 1 (Bills) and 2 (Subpoenas)).[7] The RCBE has filed Objections to Plaintiffs' Bill of Costs. (Docket No. 205.) The RCBE argues that the Offer of Judgment precludes Jane Doe from recovering her post-offer expenses. The RCBE asserts – and the Doe Sisters do not contest – that the Plaintiffs' Bill of Costs reflects only $351.20 in pre-offer expenses, to which she may be entitled as a prevailing party. In the alternative, the RCBE argues that, if the court finds that the RCBE is liable for Jane Doe's post-offer expenses in spite of the Offer of Judgment, the court should award only expenses related to proving Jane Doe's retaliation claim.

The RCBE has filed its own Bill of Costs (Docket No. 201) with supporting documentation (*id.*, Attach. Nos. 1 ($282.93 in witness fees), 2 ($9,115.45 in transcript fees), and 3 ($2,891.27 in fees for exemplification and copying)). The RCBE incurred all of these requested expenses after May 13, 2013. The plaintiffs have filed Objections to Defendant's Bill of Costs. (Docket No. 204.) They contend that Rule 68 does not obligate them to pay the defendant's post-offer expenses and that the court should exercise discretion under Rule 54(d) to deny the defendant's expense request. Among other factors, the plaintiffs reiterate that they would be financially unable to pay any monetary award against them.

## MOTION FOR NEW TRIAL

Because ordering a new trial would moot the remaining motions, the court will first address the plaintiffs' Motion for a New Trial under Fed. R. Civ. P. 59.

---

[7] Although it was filed on behalf of all "plaintiffs," the recovery of costs necessarily must relate only to Jane Doe, who is the only plaintiff to prevail on one of her claims. As discussed herein, both sides' briefs gloss over material distinctions between Jane Doe, who is a prevailing party under 28 U.S.C. § 1988, and her sisters, who are not prevailing parties. The court has endeavored to identify these distinctions where they are relevant.

## I. **Legal Standard**

Rule 59(a) provides that, following a jury trial, the court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a) (current 2015). Generally, a court may grant a new trial under Fed. R. Civ. P. 59(a) "if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). The burden of demonstrating the necessity of a new trial is on the moving party, and the ultimate decision whether to grant such relief is a matter vested within the sound discretion of the district court. *Clarksville-Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991). When a plaintiff moves for a new trial solely on the basis that the verdict was against the weight of the evidence, a trial court may compare and weigh the opposing evidence. *Conte*, 215 F.3d at 637. However, the court may not set aside the jury's verdict simply because the court believes that another outcome is more justified. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). "The court is to accept the jury's verdict if it is one which reasonably could have been reached." *Id.* (internal quotation omitted); *see also Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir. 1996) (stating that district court should deny motion for new trial, "if the verdict was one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were she the trier of fact"). "[A] verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff & Assocs., Inc. v. Std. Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991).

## II. **Weight of the Evidence**

The plaintiffs' argument that the jury's findings were against the great weight of the evidence is without merit.

### A. Discrimination Claims of the Doe Sisters

Title IX can support a claim against a federal funding recipient premised on student-on-student harassment, provided that the plaintiff demonstrates the following elements:

> (1) The sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school;
>
> (2) The funding recipient had actual knowledge of the sexual harassment; and
>
> (3) The funding recipient was deliberately indifferent to the harassment.

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)).  Here, the request for a new trial on the sexual harassment claims must be denied if, relative to each of the Doe Sisters, the jury reasonably could have found that any *one* of these elements was not met.

Based on the evidence presented at trial, the jury could have found that the plaintiffs failed to establish any of the three elements by a preponderance of the evidence.  For example, as to the first element, the evidence showed or supported a reasonable inference that (1) the alleged harassment of the Doe Sisters did not recur after it was reported to a school official (Coach Bush) by Mr. Doe, (2) the nature of the harassment, even if offensive, was not "severe",[8] (3) the

---

[8] In their brief, the plaintiffs contend that the jury had to find that the harassment was "severe" and "objectively offensive" because it involved penetration of the Doe Sisters' rectums or vaginas.  There are several problems with this assertion.  First, Sally Doe admitted that no penetration occurred.  Second, as to Jane Doe and June Doe, Allison Bush testified that no penetration occurred, thereby creating a genuine dispute of fact for the jury to resolve.  Third, even if some degree of penetration occurred relative to Jane Doe and June Doe, the Does cite to no authority that the jury was *required* to conclude that the conduct was so objectively offensive

Doe Sisters continued to attend school, continued to participate meaningfully on the basketball team, and continued to earn grades roughly equivalent to what they were achieving during their previous home schooling; and (4) Jane Doe and June Doe never intended to graduate from SHS in the first place. In light of these and others facts presented through competent testimony at trial, the jury reasonably could have concluded that the single incidents of alleged sexual harassment of the Doe Sisters – which occurred only a handful of times over a few days and stopped after they were reported to Coach Bush – were not so "severe, pervasive, and objectively offensive" that they deprived the Doe Sisters of equal access to the educational opportunities or benefits provided at SHS by the RCBE.

The jury also reasonably could have concluded that the Doe Sisters did not prove "actual notice" of harassing conduct. The jury was instructed that an institution has actual notice when it "has knowledge of facts sufficiently indicating substantial danger to a student so that the institution can reasonably be said to be aware of the danger." The evidence did not show that SHS or RCBE officials were aware of "goosing" or similar types of harassment at SHS before Mr. Doe reported it to Coach Bush approximately two weeks after the underlying incidents. After Mr. Doe first reported that conduct, the Doe Sisters never experienced it again. In light of these and other facts presented at trial, the jury reasonably could have concluded that the RCBE did not have actual notice of potential harassment *before* the incidents occurred or actual notice that the Doe Sisters faced a continuing risk of harassment *after* it occurred.

Third, the jury reasonably could have found that, even if the other elements were met, the Doe Sisters did not prove that the school was deliberately indifferent to the harassment.

---

and severe that its occurrence deprived the Doe Sisters of equal access to educational opportunities at the school.

Deliberate indifference means that the defendant's response to the alleged harassment, or lack of response, was clearly unreasonable in light of the known circumstances. *Vance*, 231 F.3d at 260. In *Vance*, the Sixth Circuit explained the limitations on a deliberate indifference claim premised on peer-to-peer harassment as follows:

> The recipient is not required to "remedy" sexual harassment nor ensure that students conform their conduct to certain rules, but rather, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable. The deliberate indifference standard does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. The standard does not mean that recipients must expel every student accused of misconduct. Victims do not have a right to particular remedial demands. Furthermore, courts should not second guess the disciplinary decisions that school administrators make.

> The Supreme Court has pointedly reminded us, however, that this is not a mere "reasonableness standard" that transforms every school disciplinary decision into a jury question. In an appropriate case, there is no reason why courts on motion for a directed verdict could not identify a response as not "clearly unreasonable" as a matter of law.

*Id.* (internal citations and quotations omitted). Here, as detailed in the RCBE's brief, in Mr. Doe's initial conversation with Coach Bush (which Mr. Doe recorded), Mr. Doe reported the harassment but specifically told Coach Bush not to involve the police or the school board in the matter. Within three school days after Mrs. Doe (who apparently did not agree with her husband's initial approach) notified the SHS Principal, SHS investigated the incident by conducting interviews of the Doe Sisters, the alleged perpetrator (Allison Bush), and two other teammates alleged to have knowledge of the underlying incident. SHS determined that a private one-game suspension of Allison Bush was an appropriate punishment, and Allison Bush in fact sat out a game. Based on testimony from Principal Bridgeman, the jury reasonably could have concluded that he (the principal) simply forgot to send out a promised letter to parents concerning the incident and that, when the RCBE realized the mistake a month later, it was not

"clearly unreasonable" to refrain from sending the letter when no intervening "goosing" of the Doe Sisters had occurred. Finally, after the parents met with the RCBE's Director of Schools and other officials, the RCBE conducted a second investigation, released a report, and reached the same conclusion it had reached back in November 2012. The fact that the school did not formally discipline Allison Bush was a factor for the jury to consider, but the Sixth Circuit has made clear that "victims do not have a right to particular remedial demands." *Id.* In light of all the facts, the jury reasonably could have determined that the manner in which the school handled the incident, including its multiple investigations and the one-game suspension of Allison Bush, was not "clearly unreasonable in light of known circumstances."

### B. Retaliation Claims by the Doe Sisters

The court instructed the jury that, to prevail on a retaliation claim, each plaintiff had to show (1) that she engaged in conduct protected under Title IX, (2) that the RCBE knew of the protected activity, (3) that she was subjected to an adverse action at the time, or after, the protected conduct took place, and (4) the defendant's decision to take the alleged adverse action would not have happened but for the report of sexual harassment. The jury also was instructed that, to establish "but for" causation, the jury would have to find that the RCBE would not have retaliated against each plaintiff if she had not complained of the activity, but everything else had been the same.[9] The jury found that June Doe and Sally Doe both failed to establish their respective retaliation claims.

---

[9] After the court raised the issue in its August 18, 2014 Memorandum, the parties submitted briefs disputing whether Title IX retaliation claims are governed by the "motivating factor" or the "but for" causation standard. (*See* Docket Nos. 143, 155, and 159.) The court ruled that the "but for" causation standard would apply. At the pre-trial conference, the court suggested to the parties that the court could submit the retaliation claim for resolution under each standard, so as

June Doe and Sally Doe argue that the evidence indisputably establishes that the coaches kicked them off of the SHS girls' basketball team in retaliation for reporting the harassment. The evidence on this issue was equivocal: the plaintiffs did not present competent evidence that their lockers necessarily were "cleaned out"; indeed, the record contained testimony indicating that June and Sally Doe removed all of their personal belongings from the lockers after the February 8 game, leaving only school property. Furthermore, even it were the case that the lockers were cleaned out, the evidence did not conclusively establish who may have cleaned them out, let alone whether a school or district official did so. June Doe also tweeted that, among other things, she had played her "last ball game for Siegel #bye #bye," which reasonably gave one of her coaches the impression that she had quit. Finally, none of the Doe Sisters attended practice the following week, and they made no attempt to communicate with the coaches or the administration to notify them that they would not be attending practice. In light of these facts, the jury reasonably could have concluded that school officials did not take any adverse action against the Doe Sisters in the first place or that, even if they were removed from the team, it was not a consequence of the fact that the Doe Sisters had complained about sexual harassment.

### C.  Comments by Defense Counsel in Closing

If a counsel's closing argument was improper and there is a "reasonable probability" that the jury's verdict was influenced by the improper conduct, it should be set aside. *Clark v. Chrysler Corp.*, 436 F.3d 594, 609 n.19 (6th Cir. 2006).

---

to preserve an alternative verdict for appeal.  The parties mutually agreed not to adopt that approach.

In its rulings on the Motions *in Limine*, the court granted the plaintiff's motion to exclude records produced by Motlow State Community College regarding June Doe's enrollment as a student athlete there.  At trial, June Doe testified on direct examination that she suffered from stress and mental issues due to a lack of trust in adults and peers due to her experience at SHS.  During a sidebar, defense counsel sought permission from the court to question June Doe about her experiences at Motlow, arguing that it was relevant to show that her "trust" issues might have resulted from June Doe's experience at Motlow – rather than from her experiences at SHS.  The court initially permitted defense counsel to conduct a limited inquiry on cross examination in this regard, specifically to ask whether anything happened at Motlow that may have contributed to June Doe's anxiety and trust issues.  (*See* Docket No. 209, Transcript Excerpt B.)  In a second sidebar prompted by defense counsel to further clarify the appropriate scope of questioning, the court indicated that June Doe had opened the door sufficiently on direct examination to permit defense counsel to question her about whether she had been threatened by fellow teammates at Motlow, and to follow up about whether that incident related to her anxiety and trust issues.  (Docket No. 210, Transcript Excerpt C.)  During the ensuing cross examination, June Doe admitted that her Motlow teammates threatened her and treated her badly, that her coach made her feel uncomfortable by talking to her and putting his hand on her leg, and that she reported the coach's conduct.  (Docket No. 213, Transcript Excerpt F.)

During closing argument, defense counsel addressed the Doe Sisters' asserted damages as it related to claimed mental and emotional distress.  (Docket No. 212, Transcript Excerpt E.)  Counsel pointed out that SHS adults had helped June Doe promptly to "get her out of jams" multiple times; counsel then began to contrast June Doe's SHS experiences with her experiences at Motlow, where "she had a similar problem there with her teammates" and "also had a trust

problem with her coach . . . ."  At this point, plaintiff's counsel objected, and the court sustained the objection on the grounds that the argument was not based on proof in the record.  The plaintiffs now contend that the defense statement was improper.  Without explanation, they state that there is a "reasonable probability" that this single allegedly improper statement "influenced the jury's decision."

As an initial matter, this argument presumably relates only to June Doe's claims, not to those of her sisters.  As the RCBE points out, defense counsel's statement in closing arguably was based on June Doe's cross-examination testimony already in the record, although it does appear that counsel may have been about to stray into matters excluded by the court before he was cut off.  Thus, in hindsight, the court is not convinced that the statement in the record was improper in the first place.

Even it were arguably improper, the statement only related to June Doe's claimed *damages*, not to the RCBE's potential liability under Title IX for discrimination or retaliation against June Doe.  Logically, there is no reasonable basis to believe that the statement influenced the jury's verdict for the RCBE on *liability* as to June Doe's claims.  Indeed, the jury made a liability finding against the RCBE on Jane Doe's retaliation claim but awarded her nominal damages, indicating that the jury understood the distinction between liability and damages.

Finally, even assuming that the statement was improper and could have had some residual effect on the jury's liability findings concerning June Doe's claims, the statement was a minor one in a lengthy closing argument.  There were various legitimate reasons why the jury may have found against June Doe, and the court finds no reasonable probability that this particular statement influenced the jury's findings.

### D.  The Nominal Damages Award

Jane Doe appears to argue that she is entitled to a new trial because the jury awarded her only nominal damages. She claims, without citation to the record, that she established in her direct testimony that she was embarrassed on Senior Night, that her testimony was uncontroverted, and that her proven embarrassment necessarily entitles her to more than nominal damages.

The jury was entitled to determine whether Jane Doe's testimony concerning the extent of her embarrassment was credible; it was permissible for the jury to discredit that testimony, and the court may not re-weigh the evidence or make its own assessment of the credibility of witnesses. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). The jury also could have determined that Jane Doe's embarrassment, even if true, was minor or otherwise had no compensatory monetary value. Finally, the jury could have concluded that Jane Doe's embarrassment related to her parents' conduct at Senior Night, rather than any conduct by the RCBE's employees or SHS officials.

For all of these reasons, the plaintiffs' Motion for a New Trial will be denied.

## MOTIONS AND REQUESTS RELATED TO EXPENSES AND ATTORNEY'S FEES

### I. Rule 68 and § 1988

The parties' remaining motions concern the allocation of litigation expenses and fees. All of these requests relate, in one form or another, to the effect of the Offer of Judgment.

"Rule 68 permits a party defending against a claim to make a pretrial settlement offer, and if the claimant rejects the offer but then obtains a judgment that is less favorable, the claimant 'must pay the costs incurred after the offer was made.'" *Hescott v. City of Saginaw*, 757 F.3d 518, 527 (6th Cir. 2014) (quoting Fed. R. Civ. P. 68). The rule encourages early settlements by increasing the risk to claimants of continuing to litigate once the defending party

has made a settlement offer.  *Id.*  Thus, claimants who refuse a settlement offer and later fail to

receive a more favorable judgment must not only pay their own post-offer costs, but also the

defending party's post-offer costs.  *Id.*  If applicable, the rule is mandatory and leaves a district

court without any discretion to deny costs.  *Id.*  "By encouraging compromise, Rule 68

discourages both protracted litigation and vexatious law suits."  *Mallory v. Eyrich*, 922 F.2d

1273, 1277 (6th Cir. 1991).  The rule prompts both parties to a suit to evaluate the risks and costs

of litigation and to balance them against the likelihood of success upon trial on the merits.  *Id.*

Notably, Rule 68 does not define the term "costs."  In *Marek v. Chesny*, the Supreme

Court held that "the term 'costs' in Rule 68 was intended to refer to all costs properly awardable

under the relevant substantive statute or other authority."  473 U.S. 1, 9 (1985).  "Thus, absent a

congressional expression to the contrary, where the underlying statute defines 'costs' to include

attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68."

*Id.*

In *Marek*, the Court applied these principles to an action implicating (as here) the § 1988

fee-shifting statute for civil rights claims.  Section 1988 provides that "the court, in its discretion,

may allow the prevailing party . . . a reasonable attorney's fee *as part of the costs*[.]"  42 U.S.C.

§ 1988 (emphasis added).  Based on this language, the Supreme Court concluded that, because

"Congress expressly included attorney's fees as 'costs' available to a plaintiff" under § 1988,

such fees are subject to the cost-shifting provision of Rule 68."  Thus, "[c]ivil rights plaintiffs . . .

who reject an offer more favorable than what is thereafter recovered at trial w*ill not recover

attorney's fees for services performed after the offer is rejected*."  *Id.* (emphasis added).[10]

---

[10] In *Hescott*, the Sixth Circuit considered whether a plaintiff who rejects a Rule 68 offer of
judgment and later recovers a less favorable judgment must also pay its adversary's attorney's

As the Sixth Circuit explained in *Mallory*:

> *Marek v. Chesny*, [] has exposed civil rights plaintiffs to an additional risk in rejecting a Rule 68 offer. In the absence of a Rule 68 offer, the prevailing party in a civil rights action is entitled to an award of attorney fees under 42 U.S.C. § 1988. Yet under *Marek*, Rule 68 "costs" have been construed to include all costs that may be awarded under the relevant substantive statute . . . . Therefore, as was the case in *Marek*, if the plaintiff in a civil rights action under § 1983 rejects an offer of judgment under Rule 68, proceeds to trial and wins a judgment less favorable than the offer, the defendant is not liable for the plaintiff's attorney fees, even though § 1988 awards to the prevailing party attorney fees as a part of costs.

922 F.2d at 1278.[11] In *Mallory*, the court further explained how the offer of judgment must affect a plaintiff's settlement calculus:

> The rule announced in *Marek* becomes relevant to this case because under 42 U.S.C. § 1973(e), attorney fees are included as "costs," as they are under § 1988. As a result, the plaintiffs in this case faced an additional risk if they had rejected the defendants' offer of judgment: by rejecting the offer and then subsequently prevailing but somehow receiving a "less favorable" judgment at trial, they would have been required to bear their own attorney fees; fees to which they would have been entitled absent the Rule 68 offer. Therefore, *Marek* provided an additional significant inducement for the plaintiffs to accept the offer of judgment made by the defendants in the case.

*Id.*[12]

---

fees from the offer date forward. 757 F.3d at 527. The Sixth Circuit observed that, in a typical case, § 1988 only authorizes a prevailing civil rights defendant to recover its fees where the plaintiff's action was "frivolous, unreasonable, or without foundation." *Id.* at 529 (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). In light of that distinction, the court held that, "because § 1988 is not a two-way fee-shifting statute, Rule 68 cannot force a prevailing civil-rights plaintiff to pay a defendant's post-offer attorneys' fees." *Id.* at 528 (internal quotation omitted). Here, because the RCBE concedes that the plaintiffs' action was not frivolous, unreasonable, or without foundation, the RCBE has not requested its fees as part of the recoverable "costs" under Rule 68. (*See* Docket No. 185 at p. 2 n.2 (citing *Hescott*, 757 F.3d at 529).)

[11] Although *Marek* and *Mallory* addressed § 1983 actions, the parties here do not dispute that the same principle applies to the plaintiffs' Title IX action.

[12] *Marek* has generated a substantial body of scholarly debate about the purposes of Rule 68, its use as a "settlement promotion tool," and its application to civil rights cases. *See, e.g.*, Jay Horowitz, *Rule 68: The Settlement Promotion Tool that Has Not Promoted Settlements*, 87 DENVER U. L. REV. 485 (2010); Michael Solimine & Bryan Pacheco, *State Court Regulation of*

"Operation of Rule 68 is mandatory, and the district court retains no discretion under Rule 68 to alter the rule's sometimes severe application." *Sharpe v. Cureton*, 319 F.3d 259, 274 (6th Cir. 2003) (internal quotations and brackets omitted). "This lack of discretion is particularly true in cases in which the offer of judgment has been rejected and the subsequent award to the plaintiff is less favorable than the offer. In these cases, the district court *must* award costs to the offeror." *Mallory*, 922 F.2d at 1278. Thus, the application of Rule 68 is fundamentally different than the application of Rule 54(d). *See Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 295 (6th Cir. 1989) ("Although the district court normally has discretion [under Rule 54(d)] as to whether to award costs to the prevailing party, where a Rule 68 offer is made and the judgment finally obtained by the plaintiff is not more favorable than the offer, he *must* pay the costs incurred after the asking of the offer. This language is mandatory; where the rule operates, it leaves no room for district court discretion.") (quoting *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 442 (9th Cir. 1982)).

Here, the RCBE's Offer of Judgment contained a $30,000 unconditional offer to settle the case with all three plaintiffs, "inclusive of any alleged damages, interest, costs, attorney's fees, or any other amounts whatsoever." Under the terms of § 1988, only Jane Doe, who received a verdict in her favor on her retaliation claim, is a "prevailing plaintiff." Thus, the

---

*Offers of Judgment and Its Lessons for Federal Practice*, 13 OHIO ST. J. ON DISP. RESOL. 51 (1997); Robert G. Bone, *To Encourage Settlement: Rule 68 Offers of Judgment, and the History of the Federal Rules of Civil Procedure* 102 NW. U. L. REV. 1561 (2008). For example, Professor Bone's article traces the history of Rule 68 and contends that, based on his construction of Rule 68's antecedents in nineteenth-century common law doctrines and related state codes, the Supreme Court has fundamentally misinterpreted the purposes and function of an offer of judgment, which Professor Bone believes was never intended as a settlement tool in the manner in which we understand it today.

question for the court to resolve is whether the "judgment obtained" by Jane Doe was more or less favorable than the RCBE's Offer of Judgment.[13]

### B.       Comparing the Actual Judgment to the Offer of Judgment

In determining whether a Rule 68 offer is "more favorable" than the actual judgment, "Rule 68 requires the court to compare a settlement that includes 'costs then accrued' with the 'judgment that the [claimant] finally obtains.'" *Id.* (quoting Fed. R. Civ. P. 68.) Here, the parties dispute how the court should measure the value of the "judgment" that Jane Doe "finally obtain[ed]." Jane Doe contends that the court should (1) determine the total value of her awardable fees under § 1988 for work performed on all plaintiffs' behalf during the *entire litigation*, including both pre-offer and post-offer fees; and (2) compare that amount (plus $1.00) to the value of the RCBE's settlement offer of $30,000. By contrast, the RCBE contends that the court should not include the plaintiffs' post-offer fees in calculating the value of the "judgment obtained." Instead, the RCBE argues that the court should determine the reasonable *pre-offer* fees and expenses to which Jane Doe may be entitled, add $1.00, and determine whether that amount exceeds $30,000.

Rule 68 is silent on this issue. However, the prevailing approach, which the Sixth Circuit adopted in *Hescott*, is that the "judgment finally obtained" under Rule 68 includes the damages award plus pre-offer fees and expenses actually awarded. *See Hescott*, 757 F.3d at 527 ("[T]he 'judgment' used to make this apples-to-apples comparison includes not just the damages award, but also the claimant's pre-offer costs and fees actually awarded.") (emphasis added); *see also Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir. 1986); *Bogan v. City of Boston*, 489 F.3d 417,

---

[13] As discussed herein, the Supreme Court has held that Rule 68 does not apply to prevailing defendants. *See Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351 (1981).

431 (1st Cir. 2007); *Marryshow v. Flynn*, 986 F.2d 689, 692 (4th Cir. 1993); *Scheeler v. Crane Co.*, 21 F.3d 791, 793 (8th Cir. 1994); *Petrowski v. Merchants & Med. Credit Corp.*, 256 F.R.D. 544, 549 (E.D. Mich. 2008). The Sixth Circuit in *Hescott* approvingly cited *Marryshow*, in which the Fourth Circuit articulated the following rationale for this rule:

> Rule 68 requires that a comparison be made between an offer of judgment that includes "costs then accrued" and the "judgment finally obtained" . . . . To make a proper comparison between the offer of judgment and the judgment obtained when determining, for Rule 68 purposes, which is the more favorable, like "judgments" must be evaluated. Because the offer includes costs then accrued, to determine whether the judgment obtained is more favorable . . . the judgment must be defined on the same basis – *verdict plus costs incurred as of the time of the offer of judgment*.

986 F.2d at 692 (emphasis added). The Sixth Circuit in *Hescott* also approvingly cited *Bogan*, in which the First Circuit explained that crediting a plaintiff's requested amount for pre-offer fees and costs, rather than the amount actually awarded by the court after conducting the "reasonableness" analysis, would be illogical. As *Bogan* explained: "[A] prevailing party could always evade the Rule 68 bar simply by asking for a sufficiently large fee award so that the judgment finally obtained exceeds the offer." 489 F.3d at 431; *see also Pietrowski*, 256 F.R.D. at 549-550.

Here, the court must therefore conduct a two-step analysis: (1) the court must determine what pre-offer fees and expenses (*i.e.*, the "costs" under § 1988) are reasonable under the circumstances; and (2) the court must then add the value of the jury award to that amount (here, just $1.00) and compare that number to the value of the offer.

C.     **The Compensable Fees and Expenses**

Jane Doe seeks reimbursement for $351.20 in pre-offer expenses and $8,260.00 in pre-offer attorney's fees.  (Docket No. 206, Ex. 3.)  The court must therefore evaluate what amount, if any, of the $8,611.20 in pre-offer fees and expenses are compensable.

Section 1988 permits a court in its discretion to award the "prevailing party" in a civil rights action "reasonable" attorney's fees as part of the "costs."  *Pouillon v. Little*, 326 F.3d 713, 716 (6th Cir. 2003).  In *Farrar v. Hobby*, the Supreme Court addressed how § 1988 applies to civil rights plaintiffs who achieve only a technical victory.  506 U.S. 103 (1992).  There, the plaintiffs filed a § 1983 lawsuit against several Texas public officials, alleging a deprivation of liberty and property without due process with respect to the alleged illegal closure of a school that the decedent and his son had operated.  *Id.* at 106.  The plaintiffs sought only monetary relief at trial.  *Id.*  After a jury trial, the jury found for the plaintiffs on liability, but awarded them no damages.  *Id.* at 106-07.  The district court judge awarded the plaintiffs $280,000 in fees as the "prevailing party" under § 1983.  *Id.* at 107.  On appeal, the Supreme Court held that the district court erred in awarding *any* fees to the plaintiffs.  The Court explained:

> Although the "technical" nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988.  Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award under *Hensley v. Eckerhart*, 461 U.S. 424 [] (1983).  Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. . . . Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.  Such a comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case.  Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness [] or multiplying the number of hours reasonably expended . . . by a reasonable hourly rate.

In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his absolute right to procedural due process through enforcement of a judgment against the defendant. In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. . . . When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.

*Id* at 114-115 (internal citations and quotations omitted, except as noted) (emphasis added). The Court did not elaborate on what might distinguish a "usual" case from an "unusual" one.[14]

In *Pouillon*, the Sixth Circuit applied the principles stated in *Farrar* to a case that is procedurally analogous to this one. There, the plaintiff was arrested by police officers while staging an abortion protest on the steps of his local city hall. 326 F.3d at 715. The plaintiff filed a lawsuit under § 1983 for false arrest and malicious prosecution, seeking compensatory and punitive damages. *Id.* at 715-16. The defendants served two Rule 68 offers of judgment on the plaintiff, the second for $10,001, inclusive of costs and attorney's fees, which the plaintiff did

---

[14] In a concurring opinion, which no other justice joined, Justice O'Connor agreed with the Court's holding but wrote separately to express her opinion that, as a general matter, "[n]ominal relief does not necessarily a nominal victory make." *Id.* at 121 (O'Connor, J., concurring). Justice O'Connor believed that the difference between the amount recovered and the damages sought was not the only consideration in evaluating whether a victory was "*de minimis*": instead, in her view, courts should also look to the significance of the legal issue on which the plaintiff claims to have prevailed in the lawsuit and should consider whether the nominal damages victory "accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Id.* at 121-22. Although some circuits have adopted the O'Connor factors, the Sixth Circuit has never expressly adopted or rejected them. *See Glowacki v. Howell Pub. Sch. Dist.*, 556 F. App'x 451, 453 n.1, 455 (6th Cir. 2014). In its July 2, 2014 decision in *Hescott*, the Sixth Circuit in *dicta* indicated that it "question[s]" whether application of those factors is appropriate, "given that the controlling opinion of the Supreme Court did not adopt it." *Hescott*, 757 F.3d at 525; *but see Glowacki*, 556 F. App'x at 455 (applying O'Connor factors); *Layman Lessons, Inc. v. City of Millersville, Tenn.*, 500 F. Supp. 2d 754, 758 (M.D. Tenn. 2008) (same). Here, the parties have not referenced the O'Connor factors specifically, although both sides discuss factors other than the size of the award that bear on the "reasonableness" of Jane Doe's requested fees.

not accept. *Id.* at 716. The case went to trial. Although the jury returned a verdict for Pouillon against two of the defendants, the jury awarded only $2.00 in nominal damages ($1.00 as to each of those two defendants) *Id.* Pouillon moved for attorney's fees under § 1988, and the defendants cross-moved to recover their costs under Rule 68. *Id.* The district court denied the defendant's Rule 68 motion and granted Pouillon's motion for attorney's fees, awarding him $35,690. *Id.*

On appeal, the Sixth Circuit reversed the district court in all respects. With regard to attorney's fees, the court found that the district court had abused its discretion by awarding fees to Pouillon, who had only achieved a "technical victory." *Id.* at 717. The Sixth Circuit observed that Pouillon had sought only compensatory and punitive damages, and the court found that Pouillon had not demonstrated that his case was distinguishable from the "usual" case where a prevailing civil rights plaintiff is not entitled to attorney's fees when all that he has won is a technical vindication of his rights in the form of nominal damages. *Id.* Accordingly, the court found that the district court had abused its discretion in awarding any attorney's fees to Pouillon. With respect to the offer of judgment, the court found that (1) the Rule 68 offer of judgment was effective, and (2) because Pouillon's $2.00 nominal damages award was less favorable than the defendants' Rule 68 offer, Pouillon was obligated to pay the defendant's post-offer costs and to shoulder his own post-offer costs.[15] *Id.* at 718-19.

On the other hand, the Sixth Circuit has emphasized that "[t]oo great an emphasis on the amount realized from the judgment would detrimentally encourage attorneys to concentrate on increasing the damage award, perhaps with harm to the merits of the case; moreover, transfixion on the damage amount in establishing fees would penalize those litigants whose cases carry

---

[15] *Pouillon* did not reference the O'Connor three-factor approach.

23

slight pecuniary damages, but which present instances of significant statutory violations."

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v.*

*G&M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 503 (6th Cir. 1984).  In many instances,

the Sixth Circuit has upheld fee awards in nominal damages cases, including claims governed by

§ 1988.  *See, e.g.*, *Johnson v. Snyder*, 639 F.2d 316, 317 (6th Cir. 1981); *Fegley*, 19 F.3d at 1135

("We have upheld substantial awards of attorney's fees even though a plaintiff recovered only

nominal damages.") (internal quotation omitted).  Other circuit courts and district courts within

this circuit have also awarded damages in civil rights cases that resulted in only nominal

damages verdicts, including at least one Title IX decision.  *See Mercer v. Duke Univ.*, 401 F.3d

199 (4th Cir. 2005) (upholding $350,000 fee award to prevailing Title IX plaintiff who won only

nominal damages, where plaintiff prevailed on a "first-of-its kind liability determination" that a

contact-sport exemption cannot excuse discrimination against a female seeking to join an all-

male contact sport team, and thereby "marked a milestone" in the development of the law under

Title IX); *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119 (1st Cir. 2004) (upholding fee award to

civil rights plaintiffs recovering nominal damages, where determination that city officials had

terminated municipal employees based on their political affiliations "represented a significant

legal conclusion serving an important public purpose"); *Layman Lessons*, 550 F. Supp. 2d at

764-65 (fee award justified, where plaintiff proved a claim under RLIUPA, a recently passed

statute with "scant case law to date construing it").

 Here, the court finds that a partial award of pre-offer fees is warranted.  On the one hand,

Jane Doe sought only monetary relief, engaged in approximately eighteen months of litigation,

spurned two early offers to settle the case for a substantial sum, and demanded $325,000 in

compensation at trial.  Her lawsuit sought only monetary relief from start to finish.  On the other

hand, the statutory right under Title IX to be free from retaliation for reporting sexual harassment is an important one. If acts of retaliation, even minor ones, are left unchecked, it could chill the exercise of the underlying rights that Title IX seeks to protect. Although Coach Bush's decision not to play Jane Doe on Senior Night appears to be the only alleged retaliatory act for which the jury held the RCBE liable, the vindication of Jane Doe's rights under Title IX may have a future deterrent effect.

In weighing these competing considerations, the court finds that the results obtained were limited, but not *de minimis*. Under the circumstances, the court finds that a "reasonable" fee in this case is a partial pre-offer attorney's fee award (and cost award) that is discounted for the limited results obtained. Even the plaintiffs concede, relative to their request for all of their fees, that a reduction of at least 50% is warranted to account for the limited results obtained. Relative to the pre-offer fees, the court will reduce the requested fee award by two-thirds, resulting in an award of $2,753.33 in fees. Although the RCBE has asserted other arguments as to why the plaintiffs' fee request should be reduced, such as duplication of effort or work on matters irrelevant to the litigation, those arguments are largely inapplicable to the pre-offer time entries. The court finds no reason to adjust its pre-offer fee award based any of the other *Johnson* factors.[16]

As to the pre-offer expenses, the RCBE appears to concede that Jane Doe is entitled to those (meager) expenses. (*See* Docket No. 205 at p. 2 ("[D]efendant is only liable for $351.20 in pre-offer costs and the Clerk should not tax against Defendant any costs that accrued after May 13, 2013".)

---

[16] The court expresses no opinion as to how it would rule on post-offer fees, if those fees were at issue in the absence of the Offer of Judgment.

Accordingly, the court finds that Jane Doe is entitled to $2,753.33 in pre-offer fees and $351.20 in pre-offer expenses, for a total of $3,104.53. Combined with the nominal damages award of $1.00, the value of the "judgment obtained" under Rule 68 is $3,105.53.

## II. <u>Was the Offer of Judgment Fatally Ambiguous?</u>

The plaintiff argues that the Rule 68 Offer of Judgment was ambiguous, and therefore defective, because it contained an un-apportioned, lump-sum monetary offer. The text of Rule 68 is silent on this issue, the Sixth Circuit has not addressed it, and sister circuits and other district courts have taken varying approaches to this issue. Rule 68 speaks only of a single "offeree," not multiple offerees (or, for that matter, multiple offerors).

Courts generally agree that an Offer of Judgment should provide a plaintiff a "clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer." *Sharpe*, 319 F.3d at 275 (quoting *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999)); *Roska v. Sneddon*, 366 F. App'x 930, 940 (10th Cir. 2010) (same). Courts also generally agree that the offer should be sufficiently clear to permit a court to assess whether the actual judgment received by an individual plaintiff is less than that plaintiff's share of the offer. *Roska*, 366 F. App'x at 940-41. Here, the parties dispute whether the Offer of Judgment was sufficiently clear to permit a comparison between the judgment actually obtained and Jane Doe's share of the settlement offer.

There appears to be a split among sister circuits as to how best to handle an undivided Rule 68 offer. *Compare Gavoni*, 164 F.3d at 1076-77 (holding, over vigorous dissent, that only specifically apportioned offers are valid under Rule 68);[17] *Thomas v. Nat'l Football League*

---

[17] In *Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 649 (7th Cir. 2001), a case involving multiple defendants, the Seventh Circuit backed away from this categorical rule,

*Players Ass'n*, 273 F.3d 1124, 1130 (D.C. Cir. 2001) (agreeing with *Gavoni* that an unallocated offer of judgment to multiple plaintiffs is not effective under Rule 68); *with Roska v. Sneddon*, 366 F. App'x at 940-42 (distinguishing *Gavoni* and *Thomas*, and finding un-apportioned Rule 68 offer of judgment to plaintiffs to be valid, where plaintiffs were "a single family represented by a single attorney, claiming mental and emotional damages arising from the same set of facts," the plaintiffs never requested clarification of the offer, the plaintiffs' complaint demanded damages collectively, the plaintiffs never made individualized damages disclosures to defendants, and the plaintiffs stated that offer would not be accepted regardless of application to individuals); *Jordan ex rel. Arenas-Jordan v. Russo*, 2014 WL 869482 (W.D. Pa. Mar. 5, 2014) (un-apportioned offer effective, where plaintiffs were "all related, resided in the same household, and were jointly represented by the same attorney"); *Bryant v. Sagamore Ins. Co.*, 2014 WL 4269065 (E.D. Okla. Aug. 28, 2014) (un-apportioned offer valid, where plaintiffs were father and daughter, never disclosed individual damages, shared same attorney, and "were in the best position to determine their damages"); *see also King v. Rivas*, 555 F.3d 14 (1st Cir. 2009) (stating that allocation among defendants is not required).

Having examined the various approaches, it appears that evaluating a Rule 68 offer of judgment to multiple plaintiffs involves a case-specific inquiry. That inquiry generally takes into account the factual relatedness of the plaintiffs' respective claims, whether the plaintiffs are related or otherwise have an identity of interest, whether the plaintiffs are represented by the same counsel, whether the plaintiffs were in a superior position to evaluate the value of their own claims, whether the plaintiffs provided individual assessments of their damages to the defendant

---

stating that "we need not go so far as to conclude . . . that Rule 68 always requires an exact delineation of the manner in which damages are to be apportioned among multiple parties."

during the litigation, whether the plaintiffs operated as a "unified" front in litigating and attempting to settle the case, and whether the plaintiffs sought clarification of the un-apportioned Rule 68 offer at issue.

Here, all factors favor the RCBE's position. Each iteration of the plaintiffs' Complaint alleged generalized damages, without specification as to each plaintiff. The plaintiffs' Rule 26(a) disclosures included only generalized boilerplate, without specification as to each plaintiff. The plaintiffs negotiated settlement terms as a unit, such as by serving unitary settlement offers. The plaintiffs did not ask the RCBE for clarification concerning either of the RCBE's lump-sum offers of judgment. During this litigation, the plaintiffs gave no indication to the RCBE or its counsel that they would consider settling individually. Save for some limited distinctions, the Doe Sisters essentially sought recovery based on the same set of facts. Based on these factors, the court views Jane Doe's current argument as disingenuous: if the plaintiffs were legitimately unsure about the valuation of their individual claims relative to the Offer of Judgment or if they legitimately considered settling separately, they could have sought clarification of the Offer of the Judgment from the defendant or, in the alternative, asked for court intervention. Instead, they simply let the offers expire and continued to litigate as a unit.

Notwithstanding these considerations, Jane Doe argues that it was difficult to compare her proportionate share of the $30,000 offer to the value of the judgment and that, as a consequence, the lump-sum Rule 68 has no effect. If she is right, then the RCBE would have been better off if each plaintiff had *won* a liability verdict with nominal damages, rather than having two sisters lose outright. If the two sisters had prevailed by winning a verdict for nominal damages, the court would have a perfectly equivalent basis for comparison – three plaintiffs who declined to accept $30,000, and the same three plaintiffs who, in the aggregate, recovered less

28

than that in damages and pre-offer costs. The additional compensatory value of June Doe and Sally Doe's claims in this scenario would be essentially zero, and the maximum "judgment finally obtained" would be $8,614.20, reflecting total pre-offer fees and expenses requested plus $3.00 – only a fraction of the $30,000.00 demand. It would be a perverse result for the RCBE to be penalized, in effect, for having *prevailed* against two of three Doe Sisters. Indeed, that result would not further the objectives of Rule 68 in encouraging settlement and forcing plaintiffs to value their claims realistically before trial. Under the circumstances presented in this case, the court therefore finds that the appropriate comparison is between the value of the offer and the sisters' aggregated "judgment obtained," which is $1.00 plus Jane Doe's $3,104.53 in recoverable pre-offer fees and expenses. *See Roska*, 2010 WL 618092, at 941-42 (adopting similar approach); *Jordan*, 2014 WL 869482, at *17 n.9 (same). Under this approach, the RCBE's offer of judgment is effective because the $30,000 offer exceeds the Doe Sisters' collective recovery of $3,104.53.

Even if the court were to compare only Jane Doe's recovery to her *share* of the Offer of Judgment, the court would still find for the RCBE. Although Jane Doe's counsel now asserts that Jane Doe had no ability to value her share under the original offer, the court views that representation as a *post hoc* attempt to avoid the severe consequences of Rule 68, rather than a legitimate factual representation. The Sixth Circuit takes a dim view of this type of attempt to skirt Rule 68. *See Sharpe v. Cureton*, 319 F.3d 259, 275 (6th Cir. 2003) ("The firefighters' pleas of ambiguity are a thinly-veiled attempt to avoid the mandatory application of Rule 68 in this case, due to the admittedly severe effect the rule has on plaintiffs' fee award."). Indeed, the record contains at least three indications that Jane Doe valued her claims at exponentially more than $30,000 – well over the $3,105.53 that the court is awarding to her or, for that matter, the

total $8,611.20 in pre-offer fees and expenses that she has requested.  First, on April 9, 2013, before the lawsuit was filed, plaintiffs' counsel demanded an un-apportioned $500,000 to settle the claims on behalf of all three plaintiffs.  Counsel also stated that any settlement would need to be "six figures," between $100,000 and $500,000.  Second, after the court denied the RCBE's Motion for Summary Judgment, the plaintiffs made a lump-sum un-apportioned offer of $375,000 to settle the case.  Third, in closing argument, counsel for the plaintiffs requested damages of $325,000 for Jane Doe, $275,000 for June Doe, and $100,000 for Sally Doe. Considering these developments together, the plaintiffs and their attorneys were able to value their own claims, they likely valued Jane Doe's claim as worth more than her sisters' claims, and they valued her individual claim at far more than $3,105.53 (indeed, far more than the $8,611.20 in pre-offer fees and expenses requested) at all times during this litigation.  Tellingly, the plaintiffs, their parents, and their counsel have provided no sworn representations to the court that they actually valued Jane Doe's claims at or below the value of the offer (let alone at or below the pre-offer fees and expenses requested or awarded), that they actually had any difficulty evaluating the Offer of Judgment relative to Jane Doe's claims, or that Jane Doe actually encountered any internal difficulty in determining whether to accept or reject the Offer of Judgment.

However one construes the $30,000 Offer of Judgment, it is apparent that Jane Doe gambled and lost.  Although applying Rule 68 here will result in a net award in favor of the RCBE as against Jane Doe, the potential for this harsh result (forfeiting the right to recover post-offer fees and being forced to pay the other side's post-offer expenses) should have been part of her calculus in declining to accept the Offer of Judgment.  She and her sisters had an opportunity to settle this litigation for $30,000 when the case was in its infancy.  Believing that their claims

were worth far more than that amount, both individually and collectively, they refused to settle for the money offered by the RCBE. In pursuing the litigation, Jane Doe and her sisters caused a local public district to expend substantial resources defending itself against claims that a jury later found had no monetary value. In this context, Rule 68 operates to relieve the defendant of some of the litigation burdens it incurred after it made the Offer of Judgment.

## III. __Rule 54(d) and the Court's Discretion__

The plaintiffs and their parents have submitted affidavits attesting to their inability to pay any monetary award against them, arguing that indigence may be considered under Rule 54(d). The plaintiffs also argue that other factors justify either denying costs to the RCBE or reducing the cost award substantially. The RCBE argues that Rule 68 affords the court no discretion to account for any of the plaintiffs' inability to pay, as it otherwise might under Rule 54(d). In their arguments, both sides appear to be missing a material procedural distinction between Jane Doe and her sisters.

In *Delta Air Lines v. August*, 450 U.S. 346, 351 (1981), the Supreme Court held that Rule 68 does not apply when a defendant-offeror wins. Rule 68, by its terms, applies to "the judgment that the offeree finally obtains." Construing this language literally, the Supreme Court held that "the plain language of Rule 68 confines its effect to . . . [cases] in which the plaintiff has obtained a judgment for an amount less favorable than the defendant's settlement offer." *Id.* As the Sixth Circuit and commentators have observed, the *Delta Air Lines* decision creates "the anomaly that a small judgment may be much more adverse to a plaintiff who has received a Rule 68 offer than a judgment for defendant under which the plaintiff takes nothing." *Hopper*, 867 F.2d at 295 n.1; *see also* 6 James Wm. Moore et al., Moore's Federal Practice § 68.07[2] at 68-60 (3d ed. 1997); Harold S. Lewis & Thomas A. Eaton, *Rule 68 Offers of Judgment: The*

*Practices and Opinions of Experienced Civil Rights and Employment Discrimination Attorneys*, 241 F.R.D 332, 341, 345-46 (2007).  By the same token, the dissent in *Delta Air Lines*, along with other courts, have noted that the Court's construction of Rule 68 also means that a defendant who prevails is actually worse off than a defendant who loses on a claim for which the plaintiff recovers less than a Rule 68 offer.  *See Delta Air Lines*, 450 U.S. at 375 (Rehnquist, J. dissenting) (stating that "no policy argument will convince me that a plaintiff who has refused an offer under Rule 68 and then has a 'take nothing' judgment entered against her should be in a better position than a similar plaintiff who has refused an offer under Rule 68 but obtained a judgment in her favor, although in a lesser amount than that which was offered pursuant to Rule 68.  The construction of Rule 68 urged by the Court would place in a better position a defendant who tendered $10,000 to a plaintiff under Rule 68 in a case where the plaintiff was awarded $5,000 than where the same tender was made and the plaintiff was awarded nothing."); *Danese v. City of Roseville*, 757 F. Supp. 827 (E.D. Mich. 1991) (finding that *Delta Air Lines* did not permit court to apply Rule 68 where defendant had prevailed, but agreeing with Justice Rehnquist that Rule 68 had a "peculiar and anomalous" effect).

Whatever the policy merits of *Delta Air Lines*, it remains controlling law and must be applied here.  Jane Doe is the only prevailing plaintiff.  By contrast, June Doe and Sally Doe are not prevailing plaintiffs.  Therefore, under *Delta Air Lines*, the Rule 68 Offer of Judgment and the attendant mandatory cost-shifting doctrine applies only against Jane Doe, but *not* against June Doe and Sally Doe.  This distinction has two related implications:

> (1) <u>Obligation to Pay the RCBE's Post-Offer Expenses</u>: Because Jane Doe is a prevailing party who recovered a judgment less favorable than the Offer of Judgment, she must bear the RCBE's post-offer expenses under Rule 68.  By contrast, because the RCBE prevailed in full against June and Sally Doe, the RCBE's request for an award of costs against June and Sally Doe is governed

by Rule 54(d), which affords the court discretion to consider an appropriate cost award.

(2) Recovery of Fees and Expenses: Subject to Rule 68, Jane Doe is entitled to recover pre-offer fees and expenses as a prevailing party, as set forth in this opinion. By contrast, June Doe and Sally Doe are not prevailing parties and, therefore, are not entitled to recover any of their fees and expenses, whether pre-offer or post-offer.

## IV. Post-Offer Cost Awards

### A. Jane Doe: No Discretion

The RCBE demands total costs of $12,289.65. In the plaintiffs' brief opposing the defendant's Bill of Costs, the plaintiffs argue that the fees should be reduced because the plaintiffs cannot pay a fee award, they brought the lawsuit in good faith, it was a difficult and close case, and it might chill future litigation to impose a substantial cost award. None of these considerations applies to the imposition of costs against Jane Doe by operation of Rule 68.[18] Therefore, the court must award $12,289.65 in costs against Jane Doe and in favor the RCBE.

With respect to Jane Doe's ability to pay, Jane Doe's affidavit states that she works part-time cleaning and babysitting, and that she earns only $121 per month after paying her bills and living expenses. She avers that paying the defendant's costs would impose a significant financial hardship on her because she lacks sufficient disposable income. The court agrees that Jane's uncontroverted affidavit establishes that she cannot afford to pay the defendant's costs. Notwithstanding this finding, the court has no discretion to deny or reduce the award of otherwise compensable costs.[19]

---

[18] The plaintiffs have not argued that the defendant's cost award should be reduced relative to Jane Doe because the defendant did not "prevail" as against her.

[19] Unlike her minor sisters, on whose behalf Mr. and Mrs. Doe have appeared as next friends, Jane Doe was not a minor when the case was filed and she has appeared as a plaintiff on her own

## B.  June Doe and Sally: Rule 54(d) Analysis

### 1.  Applicable Law

Rule 54(d) states that, "[u]nless a federal statute, these rules, or a court order provides

otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  The

Sixth Circuit has concluded that the language in Rule 54(d) "creates a presumption in favor of

awarding costs, but allows denial of costs at the discretion of the trial court."  *Knology v. Insight*

*Commc'ns Co., LP*, 460 F.3d 722, 726 (6th Cir. 2006) (internal quotation omitted).  The "losing

party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of

the costs" are particularly relevant considerations in evaluating a losing party's request to deny

costs."  *Id.* at 726-27.  "Good faith without more, however, is an insufficient basis for denying

costs to a prevailing party."  *White & White Am. Hosp. Supply Corp.*, 786 F.2d 728, 731 (6th Cir.

1986).

The "chilling effect" of awarding costs is also a relevant consideration in determining

whether it is proper to award costs to a prevailing party.  *Id.* at 731.  Indeed, numerous district

courts in this circuit have considered the potential chilling effect on future, similarly situated

litigants to be a valid reason, among others, to decline to award costs.  *See, e.g.*, *Barber v.*

*Overton*, 2005 WL 2018134, at *1 (W.D. Mich. Aug. 20, 2005); *Pickens v. GLR Constructors,*

*Inc.*, 196 F.R.D. 69, 77 (S.D. Ohio 2000).  Additionally, the district courts may consider the

"capacity of the indigent litigant to pay the costs."  *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.

1989); *see also Jones v. Kolb*, 84 F. App'x 560, 561 (6th Cir. 2003); *Singleton v. Smith*, 241 F.3d

---

behalf.  Therefore, her parents' inability to pay is not a factor in the court's analysis of the
RCBE's entitlement to costs against her.  Even if her parents' ability to pay were a relevant
factor, the court would, for the reasons set forth in the next section, reach the same conclusion
concerning her and her parents' inability to pay the cost award.

534, 539 (6th Cir. 2001) ("[A]nother factor weighing in favor of denying costs is the indigency of the losing party"); *Spurlock v. Metro. Gov't of Nashville*, 2013 WL 6237723, at *4 (M.D. Tenn. Dec. 3, 2013); *Cain v. Montgomery Cnty.*, 2013 WL 676777, at *1 (M.D. Tenn. Feb. 25, 2013).

## 2. Affidavits Supporting Inability to Pay

According to June Doe's affidavit, she is currently attending college, she is unable to work because of her scholastic and athletic commitments, and she has no income. According to Sally Doe's affidavit, she is a Junior at a local high school, works only a "very limited basis," and earns about $150.00 per month. Finally, in a joint affidavit, Mr. and Mrs. Doe aver that (1) they are financially responsible for their four children, including three who live at home, (2) they earn income from cleaning offices and houses, from "sporadic" basketball camps conducted by Mr. Doe, and from rental payments from a tenant of their former home, (3) they earned $52,866.00 last year and had no expendable income after the payment of monthly bills and living expenses; and (4) they project that they will earn $63,082.00 in 2015, which they believe will leave them no expendable income after the payment of monthly bills and living expenses.[20] All of the Does aver that paying the defendant's costs would impose a significant financial hardship on them, individually and collectively.

The defendant has not challenged the affidavits in any fashion. Accordingly, the court will take the factual representations in these affidavits as uncontroverted.

## 3. Application of the Legal Standard

June and Sally Doe argue that the fees should be reduced because the plaintiffs cannot pay a fee award, they brought the lawsuit in good faith, it was a difficult and close case, and it

---

[20] It is not clear from the affidavits whether either figure reflects gross income or net income.

might chill future litigation to impose a substantial cost award.  Aside from its argument that the court should not conduct a Rule 54(d) analysis in the first place (an argument that the court has rejected), the RCBE does not address June and Sally Doe's arguments in any respect.

Particularly in the absence of any challenge to the affidavits or a challenge to the Does' arguments as to why they should not have to pay the RCBE's costs, the court finds June and Sally Doe's arguments to be persuasive.  Based on its familiarity with the case and its assessment of the trial testimony, the court finds that the plaintiffs brought this case in good faith, genuinely believing that they had been wronged in violation of Title IX.  The Doe Sisters and their parents were appalled by the "goosing" conduct, believed that sexual harassment had occurred, and believed that the school and the RCBE did not respond adequately.  Although this case may have been at the margins of a Title IX claim, it took the jury about a day-and-a-half to render its verdict, indicating that the case was close enough to merit substantial deliberation.  Perhaps more importantly, the potential chilling effect of rendering a full cost award could deter future plaintiffs, particularly plaintiffs without "deep pockets," from advancing potentially meritorious civil rights claims.  Finally, the uncontroverted affidavits establish that June Doe, Sally Doe, and their parents do not have sufficient income to pay a substantial award.[21]  Under the circumstances, the court finds that a denial of costs is warranted relative to June Doe and Sally Doe.

**V.  <u>Summary</u>**

---

[21] The parties have not addressed whether, in evaluating indigency, it is appropriate for the court to evaluate the financial status of the "next friends" (here, Mr. and Mrs. Doe) who are appearing on behalf of their children (here, June Doe and Sally Doe).  Because it is uncontroverted that Mr. and Mrs. Doe cannot pay a substantial cost award, this potential distinction makes no material difference here.  However, if only June Doe and Sally Doe's ability to pay were at issue, the court's conclusion would be even stronger.

With respect to Jane Doe, the court finds that (1) Jane Doe must pay the RCBE's post-offer costs of $12,289.65, and (2) Jane Doe is entitled to $3,105.53 in pre-offer fees, expenses, and nominal damages as a prevailing party. With respect to June and Sally Doe, the court will deny any cost award in favor of the RCBE.

## CONCLUSION

For the reasons explained herein, the plaintiffs' Motion for New Trial will be denied, and the parties' respective requests for fees and expenses will all be granted in part and denied in part. By operation of Rule 68, the court will (1) award $3,105.53 in pre-offer costs (including fees and expenses) and nominal damages in favor of Jane Doe, and (2) order Jane Doe to pay the RCBE's post-offer expenses of $12,289.65. In the exercise of its discretion under Rule 54(d), the court will deny any award of costs to the RCBE as against June and Sally Doe.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge